## TEXAS AND PACIFIC R'Y CO. VS. J. R. BOND.

IN SUPREME COURT, TYLER TERM, 1884.

*Common Carrier—Passenger.*—A wilful refusal to pay the proper fare justifies expulsion from a train, and after a passenger has so refused, and is being put off, he acquires no right to passage by then tendering the fare.

*Same—Rule Limited.*—To come within the above rule there must be, on the part

of the passenger, a boarding or remaining upon the train with the intention of de-frauding the company, or resisting demands for the payment of fare.

Appeal from Kaufman county.

The first proposition of appellant under its second assignment of error, viz : when the fare is paid on the train, a railroad has the right to charge four cents per mile, is not questioned on the part of appellee's counsel.

The second proposition, which brings in question the refusal of the court to give a special charge asked by counsel for appellant, presents the only point of importance in the case. The charge asked was as follows :

" That if the jury find from the evidence that the regular fare between Elmo and Terrel was thirty cents when paid on the train, and that this was known to plaintiff on the day he was ejected from defendant's train, and further find that the plaintiff only offered to pay twenty cents for such fare when applied to by the conductor, and showed an unwillingness to pay the regular fare of thirty cents, and told the conductor that he had better put him off, and that thereupon the conductor pulled the rope to stop the train, before he was aware that plaintiff had proposed to pay the extra ten cents, and that at the time the tender of the extra fare was made the train had come to a halt, or was stopping, at the instance of the conductor, then the plaintiff had no legal right to tender said extra ten cents and continue his journey after he had shown such unwillingness to pay said extra fare, and after he had told the conductor to stop the train and put him off ; that it is too late to offer to pay fare after the conductor has taken steps to stop the train where a passenger has refused to pay full fare."

It will be observed that this charge, taken as a whole, makes the unwillingness of a passenger to pay regular fair, coupled with the remark that the conductor had better put him off, amount to a refusal to pay his passage money. It further gives the railroad company the right to eject the passenger under such circumstances, even if he offers to·pay before the train halts, provided the conductor has taken steps for stopping it.

It is undoubtedly a general principle that "a wilful refusal to pay the proper fare justifies expulsion from the train." (Thom. on Car., p. 640.) The authorities seem to hold also that "after a passenger

has refused his fare, and is being put off the train, he acquires no right to passage by then tendering the fare demanded." (*Idem*; O'Brien v. B. & W. R. R., 15 Grny, 20; Hoffman v. B. & N. W. R'y, 52 Iowa, 342.)

To bring a case within these principles there must be a wilful, or at least a positive, refusal to pay proper fare, or, in other words, a boarding or remaining upon the train with the intention of defrauding the company, or resisting demands for the payment of fare.

(Thom. on Car., p. 640.)

The distinction between such a case and the present is very apparent. Bond did not enter the cars with intent to defraud the company or resist its demands for full pay. He went aboard of the train expecting that he would be taken to Terrell for twenty cents paid to the conductor as usual. He tendered that amount to the conductor in charge, with whom he had never traveled before, and upon being required to pay ten cents more, told the conductor that he had never been required to pay the additional amount, and when informed that the charge was four cents per mile when paid on the train, objected to paying it, and told the conductor, good humoredly, if he would stop the train he would get off. This was a discussion between the parties, in which Bond was endeavoring to persuade the conductor to allow him to make the journey for twenty cents, and the conductor was attempting to convince Bond that he would not do so, but must have the full fare required when paid on the train. It was just such a discussion as is liable to take place frequently between a conductor and passenger. It may arise as to the validity of a ticket, or the time when it expired, or upon like subjects, in which the conductor is expected to see and know the difference between an attempt to impose upon him and a mere mistake of facts on the part of a passenger. The present conductor should have known from the character of the discussion with Bond, the false impression as to what he should have to pay under which the latter boarded the train, and the good humored manner in which he asked to be put off, the small amount in controversy, and the great distance, which Bond would have to walk if expelled from the cars, that he was no trespasser, and that he did not wilfully, and would not persistently, object to paying the fare exacted of him. He should have allowed him a reasonable time to consider as to paying the additional money, and not acted so hastily in pulling the bell cord and

taking steps to eject appellee from the cars. As he had acted thus hastily and the appellee tendered the money immediately upon the cord being pulled—the first evidence he had that the conductor really intended to eject him—the money should have been received, and the appellee restored to his rights as a passenger. However correct the general principles announced in the charge might have been— which we do not decide—the appellant was not entitled to have them applied to the facts in evidence.

The foundation upon which these principles rest, viz : that the passenger is a trespasser and is wilfully attempting to obtain passage upon the train in defiance of the rights of the company, does not exist in such a case. A mere discussion of the propriety of making such payment under the circumstances, and raising objections to the demand of the conductor, was not a positive refusal to pay the fare. The conductor in hastily accepting it as such, acted without consideration, and should not have refused payment when it was offered him immediately upon his taking the first steps toward stopping the train. If the court had given the charge as asked, it would have announced it as law, that any display of unwillingness on the part of a person to pay money exacted as fare from him by the conductor, no matter what may have been the manner of that officer, nor what the character of the refusal, nor how pleasantly may have been the manner of making the suggestion as to putting the passenger off, would authorize his immediate expulsion, and cut him off from all right to continue on the train no matter how soon thereafter he tendered his fare. We cannot accept this as law on general principles, and we know of no case in which it is sustained by the courts.

We prefer the doctrine as laid down in Tennessee, viz : that the strict rule is confined to wilful violators of contract upon proper demand. It will not apply when he has boarded the train in an honest belief that he could pay his fare in a particular form, and the amount is tendered while he is being ejected. (Louisville R. R. v. Harris, 16 Am. and Eng. R. R. cases, 374.)

The same rule applies when the passenger is under an honest but mistaken belief that he could obtain passage for a certain sum, and a greater rate is required of him. It does not matter that the law allows a greater charge—it is enough that the passenger has been accustomed to travel for the amount he offers, or does not wilfully

persist in paying less than the company's rate when he is informed that he will be required to do so. Passengers are entitled to a reasonable time within which to comply with the conductor's demands, and he has no right to conclude that any apparent unwillingness so to do is an absolute and wilful refusal to accede to them.

(L., N. G. & S. R'y v. Guinaer, 13 Am. & Eng. R. R. cases 37.)

The necessities and conveniences of railway travel neither require nor justify such haste as was used by the conductor in the present case, and as he allowed no sufficient time for making the tender after attempting to convince Bond that the additional ten cents should be paid, he should have accepted it after taking steps toward stopping the train for the purpose of expelling the appellee.

To hold differently would be to put the person traveling at the mercy of railroad employes, and subject passengers to inconvenience and damage, unless they yield implicitly to any demand, however unwarrantable at first it might appear, provided it should, in fact, be legal and proper. We think that under the facts of this case applicable to the charge, it was correctly refused.

As to the remaining assignments of error, it is sufficient to say that there is a conflict of testimony as to whether or not the conductor saw the money when tendered. The plaintiff's witnesses prove very conclusively that he had every opportunity of seeing it, if he did not. The plaintiff did all he could to enable the conductor to see the money, and if it was not seen, the plaintiff should not suffer the consequences.

The judgment is affirmed.                    Willie, C. J.